My name is Peter Ehrlichman. I represent U.S. Bank. I'd like to reserve seven minutes, if I may. We seek the Court's consideration of the following question. Whether the District Court, sitting in diversity and considering claims of omission under the Washington State Securities Act, can redefine the standard for determining whether those omissions are material by limiting it to the following. The subjective beliefs of the actual, highly sophisticated, institutional, accredited investor under Rule 501 of the 1933 Securities Act, as determined at the time of issuance, but in the absence of full disclosure, rather than applying the objective standard of a reasonable investor, which has been determined by every single Washington appellate court that has dealt with WSSA, Washington State Securities Act. Is there any case in which the standard has been applied where the issue is limited to sophisticated investors under Rule 501? This is not a case where you have the general purchaser in the market, the small lot purchaser, who could be a plaintiff. The only possible plaintiffs here are the two holders that are sophisticated investors under Rule 501. Why shouldn't their reasonable belief be controlling in this case? Well, under the State Securities Act, there is no case whatsoever that applies 501 of the Federal 33 Act. So the specific answer would be no, I know of no such case. The Washington cases are not limiting the definition of reasonable investor to the particular buyers in question. In Hines v. Data Line, the Washington Supreme Court was considering a private placement, a small offering, and in that case made no distinction between the sophistication of the investors and the redefining of materiality to a sophisticated, reasonable investor. No court in our state has ever limited or restricted the definition of reasonable investor to a highly sophisticated one, as the district court did here. We do have, in the federal securities context, whereas materiality is the objective determination as to whether it's material or not, when you go to the reliance factor on the federal side, there certainly are cases in which the sophisticated investor issue then plays into reliance. Is that true in the Washington Securities Act as well? Absolutely. It is in the Stewart v. State of Steiner case. They adopt the Jack Boney First Circuit opinion where there are the eight elements of determining whether or not actual reliance took place, and one of the first elements that they considered in the Steiner case was the sophistication. But that whole inquiry of sophistication deals with reliance, which is the second leg of this argument, and not with respect to determining materiality. Isn't reliance really a lot closer to what we're talking about here? I understand the court used the term material. His order touched both bases, and considerations of the particular circumstances obviously come up in the context of reasonable reliance. Now, reasonable reliance is not the same thing as a legal defense, and the distinctions are important, but I wonder if we really shouldn't address this as a question of reliance because there's no doubt that the individual characteristics matter there. I think it would be perfectly logical to focus on reliance as being dispositive of this particular appeal, although there are many things that I could speak to on the materiality side, and I'd be happy to if I have time. But looking at reliance, these cases are fought over whether a fraud is articulated as misrepresentation or omission, and there's a good reason for that fight, because if it's a misrepresentation, the burden is on the plaintiff, on the investor, to prove actual reliance, that they relied upon the fraud. The burden shifts, however, if it's an omission. The burden shifts to the seller or the defendant. Prove that the investor would have, the sophisticated investor, albeit, would have taken precisely the same action, would have engaged in exactly the same transaction if all of the omissions had, in fact, been disclosed. And on this record, you see no evidence to support the trial court's very broad legal conclusion that Stern Agee had met its burden of showing a non-reliance. In fact, if you look at the three major omissions and look at the evidence on this record, there is no proof that Stern Agee offered that Mr. Goetz, the sophisticated investor, would have gone ahead with the sale if he had been notified that the stock was actually illegally issued under Washington Corporate Business Act, that he would have gone ahead if that bankruptcy remote feature, which he said was so important to the structure of this transaction, was unavailing or was substantially in doubt given the conflict that Mr. Ross had and given the fact that he was not an independent director as defined by the corporation's Articles of Incorporation, Section 4. Just stepping back, it does seem clear that the district court says for purposes of its analysis with respect to materiality that a reasonable shareholder is the sophisticated investor under Section 501. So that, of course, is not standard in the Washington securities law, but are you saying that it doesn't matter because are you conceding materiality? Oh, no, not – I'm sorry if I confuse you. Okay, that's what I just want to understand. It's very much a feature of our appeal. I just was ready to accept the suggestion. But even if it were material and you went to reliance, did he invoke the presumption of omissions? He speaks in one line or two that he understands the burden shifts to the defendants to prove non-reliance, and then he says in a single sentence, and they have not – they have shown – they have met their burden, I think is the exact verbiage. They have met their burden. But when you actually go back and look at both his oral opinion and his written order, there is no finding whatsoever as to how Mr. Goetz – how the court could determine that Mr. Goetz would take the exact same action to buy this stock if he had had this tarnished background, criminal convictions, 60 lawsuits, bankruptcy, abject failure financially, or that Mr. Goetz would have ignored the importance of the legality of the stock. There's no finding in this record that they put on proof showing that Goetz would have done the very same thing. All we have is Goetz's testimony by deposition. It seems to me that in the opinion what the court does is conflate materiality and reliance, and the reliance findings seem to me to implicitly say that this is – would have come out the same way if they had known, that it didn't matter. It's not spelled out in two steps as it should be, but it does seem to conflate into something that implicitly rejects the omission theory. Well, I grant you that the opinion seems to give short shrift to the question, the very important question of did they meet their burden to show that Mr. Goetz would not have changed his conduct whatsoever had he been provided all of the information that he was entitled to as a purchaser. I do not believe that the opinion as it focuses on this brand-new standard of materiality does justice to that second issue. And I've read the opinion many times. I cannot find anywhere in his analysis of what Goetz would have viewed as material. Let me ask you as a procedural matter, the case had five days of trial. Does that include the defense case when the judge – Two days of their – Right. But he says – this is what confused me. He said that having considered the evidence presented in plaintiff's case in chief, determined that plaintiff failed to establish the essential elements of its claim. If that's the case, I'm somewhat confused as to how, if you looked only at the plaintiff's case, he would have considered the burden shifting to the defense on the question of reliance. So that confused me. Maybe you can help me untangle that. I believe that the court did prematurely cut us off. We had not rested. We were still in our case in chief. We did announce our intention to call Mr. Olson, Daryl Olson, the provocateur here. He was under subpoena. He was on our witness list. There was a question of, after Mr. Whitehead spent two days testifying out of order, would we rest after Mr. Strodoff? The answer was no. We wanted to call Mr. Olson, particularly in light of what Whitehead had said, but also, frankly, because the judge had announced concerns about materiality, and we knew that Olson would speak exactly to materiality. 52C provides for us the opportunity to be fully heard. But it's a question. So let me just understand that, because the order says he's dismissing you on the basis of your proof, but the other, the witness was out of order. He wasn't part of your case. But he, but his opinion relies upon all of their proof, all of the deposition extracts that they put forth. If you read his order, it goes on and on about information about what happened post issuance. That only comes in through their case. The whole Whitehead testimony is relied upon by this judge in his oral decision and in his written testimony. Well, if we were to determine, I mean, there is some confusion here. He uses the wrong standard of materiality, and what he does with it is not exactly clear. Let's just say, hypothetically, you went back. You now have five days of trial testimony. What would happen? It's a very good question, and I've struggled with that. I think the only fair thing to do, the only appropriate thing to do, is remand and ask for an entire new trial. Because he viewed all the evidence through his improper legal standard of materiality. Why do you need a new trial? It's a bench trial, and you know how judges can shake out their brains. You know, I frankly am not confident, given the focus of this Court on loss causation, the focus of this Court on evidence post issuance, the equitable defenses that they brought in, notwithstanding GoToNet, the State's Supreme Court unanimous decision in September of 06 that says you cannot consider loss causation or equitable defenses whatsoever. It did not seem to deter a complete focus on post issuance facts. You know, your – another panel of this Court 9 days ago decided the Black-Somers case, and I have that case available to provide to you. I just located it. It was November 27 decided. And while it looked at 50A and the question of whether or not the plaintiff had been fully heard in the context of a jury case, that Court said, We hold that when a party seeks, during trial, to present relevant and admissible testimony from a witness on a disputed issue, Rule 50A precludes the district court from requiring that the testimony be given through an offer of proof. And they go on to cite the Fifth Circuit favorably, and they state at the end, We merely require that the usual method of proof, through live witness testimony, cannot be foreclosed, at least with respect to a key witness scheduled to provide relevant and admissible testimony as a part of the party's case in chief on an essential issue. Well, let's look at what happened in this case. As I understand it, you had Strodoff on the stand. And didn't you identify Strodoff as the final witness? Then the judge said, I'm going to grant the motion. And then you came back and said, We want to call Olson. Yes. So couldn't you argue that this was a matter within his discretion? He didn't abuse his discretion. I think he did abuse it in this context. Because by allowing Whitehead to come in out of order, he implicitly, if not explicitly, said, I'm going to hear the whole case before I make a ruling. And we all accepted the proposition that he would hear Whitehead out of order. We didn't have a chance to rebut before he dismissed us. And all their evidence came in. We didn't have a chance to rebut any of that. But the implicit understanding, or if not explicit, was, I'm going to hear it all. I've got two weeks set aside. I'm going to hear your case from start to finish. And so we had Olson scheduled for the back end of the case, which was logical in the context of how the witnesses were all going to work out, how they were going to sort out. We had Mr. Whitehead was an out-of-towner. We had Dennis Egan scheduled. He was an out-of-towner. We had a lot of logistical issues that we were struggling with. Olson happened to be a local. So all of a sudden when the judge announces a very significant concern about materiality, we have Olson under subpoena. We say, we can bring him in right now and go right to the heart of it. It wasn't going to be cumulative. It was information that was absolutely critical to his determination of materiality. And that included proving up that his responsibility for paying this economic shortfall every month, it was Olson and Eric that had to do that. That was a critical issue to get. But it didn't go to the question whether the holders reasonably would have relied on that information, whether it would have made a difference. Olson would testify as to all the bad things that he's charged with, but it wouldn't go to the question of materiality. I think it would have gone to the question of materiality for at least two reasons. One, it would have demonstrated that the record that Goetz was asked about, the litany of litigation that he was inquired about in 2005 when his deposition was taken, not 2006 when the case was tried, was much shorter and was much less dramatic than what Olson actually did. And yet we saw even in that testimony Goetz said, I'd have to think twice about whether to proceed with this offering. So even in the context of a much more limited and less tarnished background, Goetz was still testifying, I might have to think twice. And all the other evidence before the court on Olson's background, the professor from the University of San Francisco, Murphy, who testified based upon 28 years of being an investment banker, that this was, this background was highly material, notwithstanding the structural importance of the deal. So Olson was, and his background was not, the evidence concerning his background was not before the court at the moment in time that he was deciding materiality. We had to make an offer of proof, and by that offer we did suggest that it was even worse than what Goetz had been told. Finally, with respect to the. . . Do you want to reserve time? I do. You're down to three minutes. Oh, I thought that was my. . . No, that's your total time. That's my total time. Yellow hat. I do want to save time. Thank you very much. I hope I answered your question. You did. Thank you. Thank you. Thank you. Mike Redeker from Alabama for Stern, A.G. Leach. I appreciated the hospitality of the district court and the court of appeals. The judge did not act. The judge very accurately understood the whole issue of the standard of materiality. We started off. I'm a little uncertain about what constitutes the record that you all saw, but the record on appeal, the whole record, does show the first 60 pages was opening statement, and the judge quizzed me heavily about the interplay of reliance, materiality, the whole issue, the Donald Trump case in the Third Circuit, the whole issue of the context, and it's pretty darn clear. We've cited some of the cases in the brief, but it is very clear. I don't want to sound like a professor. I've taught the subject for many years in the past, but materiality is context related. The Supreme Court makes that clear in the TSC decision. The seminal decision is later picked up in BASIC, and the use of the phrase, statutory phrase, in the light of the circumstances under which they are made clearly requires contextual. Well, that's one thing to say it in the abstract. Let's get to the Washington law here. There's a Washington case. Let me just ask you, as I understood I'm looking at the judge's decision on his page eight, excerpt of record 692, where he talks about materiality, and he talks about it being a question of mixed question of law and fact based on the reasonable shareholder, and in this case he says that it's from the perspective of the accredited investor. And we cite cases to support that. What's your best support for saying that the materiality is also related to an accredited investor? Do you have anything where the court has imported a sophisticated or accredited investor standard into materiality under the Washington security statute? Yes. The Guarino case, 86 Pacific 3rd, 1185, said, in the context of repurchase negotiations, material facts include. The Guarino case is nothing of the Fifth Circuit in the Rubenstein v. Collins case, first Virginia bank shares case, which I kept mentioning to the court. Courts always look at the context. The TSC v. Northway says under all the circumstances the omitted fact would have assumed actual significance. The U.S. I'm sorry, as practitioners, and I used to do transactional work, we always have understood it is in the context, materiality is in the context. But it can't be exactly the same as reasonable reliance. Reasonable reliance turns very much on the individuals involved. Did they actually rely? That's totally subjective. Okay. At least one step. And they are different tests or different elements. So unless they're to be exactly the same, which they're not, there has to be something different about it. What do you understand to be different about materiality? Well, as I explained to the judge, this is something you wrestle with when you do transactions and you do draw up an offering memorandum or a S-1 registration statement. And you want to, on the one hand, make all the disclosures. You don't want to clutter it up with stuff. And you don't want to send the bird dog down the wrong trail on something that's irrelevant. The test is reliance is transaction causation. And that goes into what's in the brain of the guy, why he did the transaction or why he didn't or wouldn't have done the transaction. Whereas materiality is theoretically loss causation related. It's more, as the Supreme Court has said, it's more an indicator of it's a nexus to loss causation. It is not loss causation. Right. But they all, and as I explained it to the judge, if you look at it like a spectrum, reliance overlaps inevitably with the transaction causation with the nexus related, the loss causation nexus related concept of materiality, which in turn relates, goes over to loss causation. We know that loss causation is not in the Washington statute. It's not a blue sky principle. Alabama, my state, has the classic blue sky statute. Washington does not. Washington does not. And given that, if you had a transaction with both sophisticated investors and others that didn't qualify under that definition, would you have different standards of materiality? Materiality is, by definition, for a reasonable investor, what is reasonable? Does a judge make it up? No. I think in our system of law, for it to provide a guidepost for people in capital raising in our system, which our whole country is based on, you have to have, and the practitioners who write disclosure documents and the advisors to companies, you have to have the understanding of where you find the reasonable. Reasonable is not Sadie Jones, the widow. Let me go back to my question, okay? I don't need a lecture on transactions, S1s, disclosure statements, or drafting corporate documents. The question was this. The question was, if you have a sophisticated or accredited investor and you also have investors that are not, that I'll call run-of-the-mill mom-and-pop investors, does the materiality standard differ for those if it's the same transaction? No. In the same transaction, absolutely not. Starr v. Smith in my old circuit, the Fifth Circuit, as they've quoted, I used to do that. Okay. You know what? We're in the Ninth Circuit, but more specifically, we're under Washington law. There's a lot of federal securities law that's important to Washington law, but not everything. So if you could address the Washington cases, that's what we're going to be looking for. Washington law is absolutely consistent with law everywhere in the country. If this is a transaction where you have some retail and some institutional, you have to meet the lowest common denominator of understanding, and you have to give them everything you can think of. Well, let me ask you, to get back to the decision in this case, where does the judge address the application of the materiality standard? Is there anything in the opinion that shows that he considered the facts of this case with respect to materiality? I think he spent almost all of it on the reliance. If you read the end of his decision, he either uses the word reliance eight times or he uses sentences. I understand that, but the issue is did he address materiality? I think he did. Where? He starts on page ER 692, which is page eight of the order, and what he does is he looks at the objective evidence of who was involved here, not just gets. He had evidence presented to him that Moody's looked at this, four different law firms looked at this, some of the biggest in the southeast looked at it. He had the evidence that four major investors looked at it, not one of them, and surely all of that together creates a penumbra of what is a reasonable person in this situation, considering this investment. He didn't rely simply on gets. He heard a lot of evidence about Moody's. He heard a lot of evidence about the Womble Carlisle firm, the Stoll Reeves firm, not just Ross. I don't see how that addresses the materiality issue. It does in the sense that the judge then goes down to what they are told, and I think this has got to play into this. This is rather unique. You don't find any Washington case with an offering document that says, I don't think this is an omissions case, where they say there is background information, but guess what? We have not investigated it, and we aren't going to tell you anything about his background, and if you want to know, here's the name of the man, Verrill Olson, and they gave his address and his phone number, and gets called him one time, and after that, as it's shown in Exhibit 509, they decided to do no further due diligence. Now, that's not, I don't care whether you call that reliance or materiality, what they're saying is, and the judge is saying on pages eight and nine, we were telling them this is not material. If they disagreed with us, they don't make the investment. Well, but you've got a case here where the charges that facts were omitted, facts that might have been material. Now, where in the opinion is that question addressed? It is not, he doesn't really address it that way, but it has to be omitted from something. It's omitted from a statement that says, we're not going to tell you. There is a history, but we're not going to tell you anything about it. If you want to know, on page eight of the CPOM it says, here's the guy to call. That, in my judgment, converts it to, it's not a pure omissions case. I don't think there's a burden shift. In other words, your view would be they were on notice through at least a statement. They were more than on notice. Everybody discussed the CPOM in drafts, the evidence shows, went back and forth, these guys. I mean, they were heavily involved at all stages, and everybody, there was a question raised in Exhibit 509, which is in the record, the excerpts on appeal. He said, do we do any due diligence? They decided no, due diligence on Olson. They said no. Now, in addition, the evidence is they had a bunch of law firms that did consider the question, two of which we know had his record. But does, you know, we're back to that. That, to me, sounds more like reasonable, why there might have been, it would have been unreasonable reliance because you had, you know, all the legal talent in the world, and you had the nature of the investors. So it seems to me we're shifting back to reliance, whereas I thought that Judge Schwarzer's question was focused on material. You know, we're having some trouble on this materiality question. You're both asking the right questions, and Judge Schwarzer's absolutely right. The judge's opinion, as written, I don't think in his brain, but as written, conflates the two. I don't think he's confused. I don't think Judge Leighton is confused. Is there any place in the record, in the trial record, where the judge talks about materiality and says, in effect, well, I don't think it would have made any difference to the holders? Or what's his name? He puts it this way. He said it, and I think I wrote down the number of pages where he said it. He wrote it at ER. He said it at ER 654, 658, 660, 661, 669, 671, and 673. If he said it once, he said it those about eight times. Getz got here exactly what he was looking for. That's what he says in his opinion. He said it in the oral argument, and Mr. Ehrlichman was answering those questions, and he kept making the points. That's the reliance. But it also relates to materiality. Exactly what he wanted. This deal started as a reliance. I don't agree with that. I think that's the difficulty. He actually incorporates that sentiment into his opinion as well, almost in those precise words. But it seems to me that does not get to materiality. Materiality is what is the purpose of this investment. It is a short-term, variable rate, reset every quarter type piece of paper that can be called at any time. The money can quickly be moved out of this into something else. The interest is fully accrued for the quarter. That's beside the point. What's materiality is information that he did not get. Did that matter? Did it matter that he wasn't told about the ---- The judge indicates it did not matter, and he also indicated both in the footnotice opinion at 691 and in oral argument, you could have brought in everything you wanted about Olson. By the way, that shoplifting conviction is the only really new thing they pointed out, and that was the same year he had the drug paraphernalia charge, 12 years earlier. And it wasn't, you know, 1990 must have been a tough year for Mr. Olson. A lot of things happened in that year, same year, and it was all 12 years earlier. The judge says to himself, what is material in the context? Either this court will decide the context does not matter and one size fits all in the securities business,  or this court will say, yes, we've looked around at the TSC case and the decisions. I think there's something else here, because I think there's a distinction between, yes, context matters, this has to be an accredited investor because only somebody like that is eligible to do this, so we're going to assume sophistication and so forth. And what it seems to me we have here, which is an opinion both in the oral statements and the written opinion focusing very much on these people and what they cared about and what they did and what they wanted. The latter speaks very much to reasonable reliance to the extent that materiality has to be something different. I think it is at least a generic reasonable investor who's qualified to make this investment. The fact that Mr. Goetz cared only about X is relevant evidence, but Mr. Goetz is not the only reasonable investor. Constantly throughout both the oral statement and certainly the written opinion, it's really reliance he's talking about, not materiality. And my problem there is because reliance is an affirmative defense with the burden on the defense, and the plaintiff, even if we say Mr. Olson's evidence properly was considered by the court, the plaintiff hasn't had the opportunity to respond to that portion of Mr. Whitehead's testimony that has already come in and to whatever else it would be presumably allowed to present by way of rebuttal in order to respond to this affirmative defense of reliance. Oh, actually, I disagree with that, Your Honor. That's my point. How exactly is the procedural purpose true? First of all, let me make clear my position. I'm not all that happy with the way Judge Layton expressed I am comfortable with the fact that he absolutely understands the issues and followed the law. There's no doubt. You just got to see the colloquy. He's a thoughtful man, and he wanted to know the differences. Now, going to the chance, when you try a case, you make decisions. We don't know why they didn't want to bring Olson, who was a local, in their case in chief. There's nothing that prevented them from putting him up as the first witness, as far as I know. I think why they didn't do it was the court can fairly infer that it wasn't him. Time is going by. I don't really care much about Olson. My concern with this question is, okay, suppose we get the point of saying we're looking at this as reasonable reliance. There may be bases for the judge's resolution of that issue, but that's an issue that gets presented by the defense, with the burden on the defense. Procedurally, is reasonable reliance, or the absence of reasonable reliance, something the judge can use to pull the plug on this case at the stage when he did? Yes. Why? Because, first and foremost, the decision to rest had been announced on the second day, the fourth day. Everybody understood that. I accept that. My point is, they're resting on their case in chief. They don't have the burden on reasonable reliance. I understand that, but we'd already put on our main witness. Did they respond to that witness within their case in chief? I tried cases in Hawaii. We always had witnesses out of order. It was a way of life for us, and you always had to figure out exactly where that evidence was going to be treated. What was the understanding here in terms of when Whitehead was going to be responded to? They had no response to Whitehead. It's a practical matter. You look at who they were going to call. They were going to call Olson. He was going to be cumulative, Rule 403, and that's what the judge clearly indicates in his footnote. He doesn't cite 403. They were going to have Egan, who has nothing to add, and we were going to have Mike Liles, a well-known securities lawyer who would have rebutted Murphy. That's it. There were no other witnesses. Everybody else had already been put on. They cross-examined Whitehead. They felt it was good and sufficient opportunity. They took Whitehead on an extensive cross-examination. Now, that was pretty much the end of the case. You look at the parts of the record where the lawyers repeatedly, the judge kept asking us every day, as a good trial judge will, who's left, who you're putting on, and there was no secretiveness about this. Each side told the other and the court, these are the people we got left, these are the order, Whitehead is from out of state, and everybody was gracious and accommodated that. But there was full and fair hearing, and unlike the Black Summer case, which I was handed this morning, in this case, they had already put up Whitehead. They had all the examination. He was our main live witness, and they knew it. And at the end of that, all we had left was an expert, basically, to put on. Now, what are they going to do? They can call Olson, they can tell us they're going to call Olson. They gave us no clue they were going to call Olson. Instead, they put up Strodhoff. And they had always told us Strodhoff was going to be their capstone, their ending witness. Then, the only technical thing is they did not say the words, we rest. But they had put on their last witness, put on the full direct, at the time. There was nothing, frankly, left to put on that wouldn't have been cumulative under Rule 403. Now, I only have 43 seconds left. I would make a plea to this court to understand one of the conceptual problems we have here is that this has turned the statute on its head. And I didn't cite in our brief, but there is absolute excellent Washington case law for the fact the Washington statute only allows contribution, the Blue Sky statute. The legislature knew it would not put indemnity in, and that's what they're asking for here. These guys never bought these. Well, these guys did. USB bought these securities. They are a purchaser. The time they bought it, they knew everything. So I think they're a stop. As far as their joint tort fees, they were negligent. Washington has abolished indemnity from joint tort fees. The Toste case is very good, needs to be read, and it cites the Faison case inside it. And then on the non-tort, Washington, like many other states, says you can't have indemnity between non-tort fees unless there's a legal duty running between them, a legal connection, like a contract or something. And there was no legal duty here running between SAL and them. Thank you. You have some time for rebuttal. Thank you. It is incorrect to suggest that we had completed our case in its entirety at the time the court dismissed under 52C. Not only in addition to Mr. Olson, we had Mr. Dennis Egan listed. In fact, you'll see the colloquy about him flying in on Monday. He was a bank officer who was very experienced in these transactions. And also we had Mr. Murphy scheduled to come back and testify after Whitehead. Remember, Murphy is the investment banker, the equivalent of Whitehead, and then he became a professor teaching finance at the University of San Francisco. He was prepared to testify in response to Whitehead's statements about reliance and materiality. So it's improper to suggest that the case was essentially done when the judge dismissed it. Moreover, we contend that based upon the record in front of you, there is no way that this court could find that Stern Agee had met its burden of proof demonstrating that Goetz would not have changed his position if full disclosure of these critical facts, not just Olson's tarnished background, but critical omissions concerning the legality of the transaction, critical omissions concerning the bankruptcy remote protection that he so viewed as important, that Stern Agee cannot on this record demonstrate to you that they met their burden of non-reliance. And the judge does not help at all by pointing out in any findings that you can take as verity or that you can review under a clearly erroneous standard any findings with respect to Stern Agee meeting its burden. The standard of review here is de novo, and the Miller v. Thain international case decided that 10 days ago for this circuit. If you look at what Mr. Goetz did when he learned of the Penson investment litigation against Eel River, had nothing to do with this $15 million investment whatsoever, had something to do with stock trading amounts being owed. As soon as he learned of the Penson investment case, he tendered. If Eel River or Buck Olson was not critical, was not important to him, he would not have taken that action. So not only does his words, the testimony that he gave in 2005, but also his actions, the actions he took, demonstrate that he thought this was material. There were other events that occurred that would have enabled him to tender the shares, that might have given him pause, like when the money went to Switzerland. He did not know, I don't mean to interrupt you, but he was not aware and he testified he was completely unaware of that fact at the time that he tendered. I didn't mean to interrupt you, but that's a... So he didn't know what... He knew nothing of that. What Olson was doing as the manager of the account. Exactly, sir. He just learned of the event of the lawsuit itself, and within about 24 hours he tendered. That action speaks loudly. We were suggested that Garino is the Washington case that describes materiality. I know Garino very well. It does not assist Stern Agee in their argument that accredited investors is now part of the definition of a reasonable investor under Washington law.  Garino, which counsel suggested, was the answer to your question about which Washington case refines the definition of reasonable investor to include the concept of accredited investor. It does not say that. If we were to determine that if you assume material emissions and then you assume that the burden shifts to the defendant, but nonetheless there's a heightened standard on reliance because you do have an accredited or sophisticated investor, why wouldn't the judge's finding vis-à-vis reliance then be controlling and essentially definitive? It is a mixed question of law and fact, and you have the right, DeNova, to look at all of the evidence. The judge just focused on Getz. He just focused on Getz and did not consider all of the evidence before him, the evidence of Sullivan, who was Stern Agee's fellow, who said if I'd known about this Olson's background, I would never even have brought it to the Finance Committee. He's the one that was the initiator of this with Stern Agee. One last question then is if you have a partial disclosure, which is, if you want to find out about this guy, have at it, here's the information, is that an omission or is that notice tantamount to putting them on notice of a duty of inquiry and due diligence? We do address that issue in the briefs. Washington does not require any due diligence on the part of purchasers. It's to be liberally construed. The Act requires full disclosure, and disclaimers of the sort that was in the Stewart versus the State of Steiner case are not, do not save the seller or the broker-dealer who materially aids. Disclaimers do not get you over the hump. And so putting in a suggestion that if you have any questions, please call Mr. Olson, is precisely the kind of implicit suggestion that they have vetted this guy and that he's okay, and if you have any questions, give him a call. And that, the addition of that statement alone in the private placement offering suggests that Olson and Eric were important facets, not the central, because credit facility was important to be sure, but the suggestion, call Olson, suggests that they had to be full and complete and truthful in all disclosures relating to Olson. You can't put something in the offering and then be incomplete. Thank you so much for your attention. Thank you to both counsel for your arguments this morning. The case of U.S. Bank versus Sterne G is submitted. The last case for argument this morning is Spokane versus Prudential Equity.
judges: McKeown, Clifton, Schwarzer